## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

KATHRYN DIRKS,                          :
LINDSEY HOSFORD,                        :
NIKKI NICHOLS, and                      :
RASHON BOHANNON,                        :          Civil Action File
                                        :
        Plaintiffs,                     :          No. _____
                                        :
vs.                                     :
                                        :
UNITED STATES OF AMERICA,               :
PHILLIP GOLIGHTLY and                   :
ADAM SHEPHERD,                          :
                                        :
        Defendants.                     :
_____         :

## <u>COMPLAINT FOR DAMAGES</u>

NOW COMES Kathryn Dirks, Lindsey Hosford, Nikki Nichols and Rashon Bohannon (collectively "Plaintiffs") and file this Action against the United States of America (hereafter "United States" or "Defendant") on claims of negligence, assault, battery, false imprisonment, and intentional infliction of emotional distress pursuant to 28 U.S.C. § 1346 et seq. (Federal Torts Claim Act) and claims against Phillip Golightly and Adam Shepherd for United States Constitutional Violations under <u>*Bivens v. Six Unknown Named Agents*</u>, 403 U.S. 388 (1971) (Bivens) as follows:

1

## PARTIES

### *Plaintiffs*

1.

Kathryn Dirks ("Ms. Dirks") is a 30-year-old female who was remanded into the custody of the Federal Bureau of Prisons (hereafter "BOP") after accepting a plea agreement.  Ms. Dirks was a non-violent, first time offender who served her prison sentence at FCI Tallahassee in Tallahassee, Florida (hereafter "FCIT") from 2016 to 2020 until her recent transfer to FCI Hazelton in West Virginia where she remains incarcerated.

2.

Lindsey Hosford ("Ms. Hosford") is a 38-year-old female remanded into the custody of the BOP after accepting a plea agreement.  Ms. Hosford was a non-violent, first time federal offender incarcerated at FCIT from 2016 to the present date.

3.

Nikki Nichols ("Ms. Nichols") is a 39-year-old female remanded into the custody of the BOP after accepting a plea agreement.  Ms. Nichols was a non-violent, first-time offender incarcerated at FCIT from 2016 to the present date.

4.

Rashon Bohannon ("Ms. Bohannon") is a 38-year-old female remanded into the custody of the BOP after accepting a plea agreement.  Ms. Bohannon was a non-violent, first time offender who was incarcerated at FCI Marianna in Marianna, Florida ("FCIM") from 2016-2017 and at FCIT from 2017-2020.

*Defendant*

5.

Defendant United States of America is a sovereign country subject to liability and damages for the wrongful conduct of its employees and agencies under the Federal Torts Claim Act.  The United States may be served with process pursuant to Fed. R. Civ. Pro. 4(i)(1) as follows:

> Lawrence Keefe or designee
> United States Attorney, Northern District of Florida
> 111 N Adams Street
> Tallahassee, Florida 32301
>
> *Certified mail copy to*:
>
> United States Attorney, Northern District of Florida
> c/o Civil Process Clerk
> Northern District of Florida, Tallahassee Division
> 110 E Park Avenue, Suite 100
> Tallahassee, Florida 32301
>
> Mr. William Barr
> Attorney General of the United States
> U.S. Department of Justice
> 950 Pennsylvania Avenue, NW
> Washington, D.C. 20530

3

6.

Defendant Phillip Golightly is a resident of the State of Florida and may be served with process at his personal residence within the State.

7.

Defendant Adam Shepherd is a resident of the State of Florida and may be served with process at his personal residence within the State.

8.

FCIT and FCIM wardens, associate wardens, executive staff, department heads, supervisors, counselors, professional service providers and prison management (hereafter "FCI Management Team") were grossly negligent in the management, supervision and retention of male correctional officers at FCIT and FCIM engaged in the sexual harassment and abuse of female inmates.

9.

The Special Investigative Services Unit ("SIS") assigned to FCIT and FCIM was responsible to investigate any alleged criminal activity involving staff members or inmates.  SIS members were grossly negligent and derelict in their duties to manage, supervise and investigate male officers at FCIT and FCIM engaged in the sexual harassment and abuse of female inmates.

4

10.

The Office of Internal Affairs ("OIA"), the Office of Inspector General

("OIG"), the U.S. Department of Justice ("DOJ") and many other special agents

and supervisory attorneys were responsible for the investigation and prosecution of

male correctional officers sexually abusing female inmates at FCIT and FCIM.

These agencies failed to timely investigate and prosecute the criminal activity

perpetrated by the male correctional officer identified below.  (SIS, OIA, OIG and

DOJ are collectively referred to herein as the "Prison Investigative Agencies").

11.

Officer Phillip Golightly served as a correctional officer at FCIM, FCIT and

other correctional facilities operated by the BOP for five (5) plus years until his

resignation in 2020 stemming from years of sexual misconduct with female

inmates. Officer Shepherd was a correctional officer at FCIT where, upon

information and belief, he remains employed by the BOP.

12.

Officers Golightly and Shepherd were known sexual predator by the FCI

Management Team and the Prison Investigative Agencies but was allowed

unrestricted and unsupervised access to female inmates.  Officer Golightly engaged

in the systematic sexual abuse and harassment of Plaintiffs and recently plead

guilty to criminal charges for sexual abuse of a ward during his time as a prison

officer for the BOP.  True and accurate copies of the federal indictment against

Officer Golightly and his subsequent plea agreement are attached hereto as Exhibit

A.

## JURISDICTION AND VENUE

### 13.

This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. § 1346 et seq. (Federal Torts Claim Act) as it involves liability of the

United States of America reserved to federal courts and over the claims against

Defendants Golightly and Shepherd for violations of the United States Constitution

pursuant to U.S.C. §§ 1331 and 1201.

### 14.

This Court has personal jurisdiction over Defendant United States of

America pursuant to 28 U.S.C. § 1346 et seq. (Federal Torts Claim Act) and over

Defendants Golightly and Shepherd for committing United States Constitutional

violations within the State of Florida.

### 15.

Venue is proper in this Court pursuant to 28 U.S.C. § 1402(b) as the acts and

omissions set forth herein occurred within this federal judicial district.

## FEDERAL BUREAU OF PRISONS

16.

The Federal Bureau of Prisons ("BOP") is a United States federal law enforcement agency responsible for the custody of individuals who have violated federal laws.  The BOP's stated mission is to "protect public safety by ensuring that federal offenders serve their sentences of imprisonment in facilities that are safe, humane, cost efficient and appropriately secure."  The BOP employs over 35,000 individuals at 122 institutions across the country.  The BOP is currently responsible for the custody and care of over 13,000 female inmates incarcerated at 27 separate BOP facilities.

17.

Despite its stated mission, the BOP has created and maintained a sanctuary for male correctional officers to sexually assault and abuse female inmates. The sexual abuse at these female prisons is rampant but goes largely unchecked as a result of cultural tolerance, orchestrated cover-ups and organizational reprisals of inmates who dare to complain or report sexual abuse.

18.

This systemic misconduct within the BOP was the subject of a recent U.S. House of Representatives investigation for the Committee on Oversight and Government Report.  The nine-page report concluded that misconduct by prison

officials is "largely tolerated or ignored altogether" allowing officials to operate outside of the rules.  The committee reviewed specific cases where "individuals deemed responsible for misconduct were shuffled around, commended, awarded, promoted or even allowed to retire with a clean record and full benefits before any disciplinary action could apply."

## PRISON RAPE ELIMINATION ACT

19.

The Prison Rape Elimination Act ("PREA") was signed into law by President Bush in 2003 and applies to all federal facilities managed by the BOP. PREA's goal is to deter the sexual assault of prisoners and to curb prison rape through a zero-tolerance policy.

20.

Because the female inmates are fully dependent on the correctional officers for basic necessities and privileges, all sexual contact, with or without the consent of the inmate, is classified as abuse.  Sexual abuse and sexual harassment are defined in section 115.6 of the Act as follows:

*Sexual abuse of an inmate, detainee, or resident by a staff member, contractor, or volunteer includes any of the following acts, with or without consent of the inmate, detainee, or resident:*

*(1) Contact between the penis and the vulva or the penis and the anus, including penetration, however slight;*

*(2) Contact between the mouth and the penis, vulva, or anus;*

*(3) Contact between the mouth and any body part where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;*

*(4) Penetration of the anal or genital opening, however slight, by a hand, finger, object, or other instrument, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;*

*(5) Any other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;*

*(6) Any attempt, threat, or request by a staff member, contractor, or volunteer to engage in the activities described in paragraphs (1)-(5) of this section;*

*(7) Any display by a staff member, contractor, or volunteer of his or her uncovered genitalia, buttocks, or breast in the presence of an inmate, detainee, or resident, and*

*(8) Voyeurism by a staff member, contractor, or volunteer.*

*Sexual harassment* *includes*

*(1) Repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one inmate, detainee, or resident directed toward another; and*

*(2) Repeated verbal comments or gestures of a sexual nature to an inmate, detainee, or resident by a staff member, contractor, or volunteer, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures.*

21.

As mandated by PREA, the BOP conducts annual PREA audits ("Audits") at each federal prison facility. The annual Audits for FCIT and FCIM are <u>materially</u>

incomplete as the auditors failed to interview any female inmates that were

involved in or witness to PREA violations.

22.

The reports suggest that these female inmates were not available for

interview as they had been transferred to another prison facility.  The failure to

interview victims of PREA violations undermines the Audit results and

incentivizes FCIM and FCIT to transfer victims of sexual abuse rather than

cooperate with a thorough PREA investigation.  By transferring victims of sexual

abuse, FCIM and FCIT shields itself from legitimate investigation and suppresses

complaints by punishing the victims.

23.

The FCIM and FCIT transfer policy also demonstrates the BOP's failure to

put the rights of the victims ahead of its own economic interest.  Before any BOP

employee can be punished, transferred or reassigned for sexual abuse,

administrators must carefully navigate the collective bargaining agreement.  In

almost every instance, the collective bargaining rights of the employees outweigh

the rights of the victim and it is the victim that receives the full weight of

punishment by transfer to another facility or other punitive measures.  In no other

context are the rights of the sexually abused subordinated to the economic interests

of the institution and the collective bargaining rights of the abusers.

## FCIT and FCIM

24.

FCIT and FCIM are federal prison facilities operated by the BOP through the United States Department of Justice.

25.

Female inmates at FCIT and FCIM are segregated into distinct housing units with dormitory style cubicles for each inmate.  Many inmates are afforded work, educational and vocational privileges within the complexes.  Inmates are subject to daily "counts" but are given some basic freedoms to move and work on the complex.

26.

FCIT and FCIM employ correctional officers, facilities staff and management to oversee and operate the prison facility.  The correctional officers are trained, managed, overseen and paid by the BOP through the United States Department of Justice serving "investigative or law enforcement" functions.  The correctional officers are federal employees subjecting the United States of America to liability for improper actions committed within the course and scope of their employment, under color of federal law, or in violation of specific federal statutes.

27.

Officers Golightly and Shepherd were known sexual predator to the FCI Management Team and the Prison Investigative Agencies.  Officer Golightly had been investigated on numerous occasions for sex crimes against female inmates. The FCI Management Team and Prison Investigative Agencies were well aware of the female inmates' reluctance to come forward with information on sexual abuse for fear of reprisal, including, but not limited to, transfer to a different facility, disciplinary segregation, loss of early release rights, detrimental write-ups, loss of work privileges, and interference with vocational skills programs.

28.

In fact, the FCI Management Team instituted a policy whereby inmates complaining of mistreatment by prison officials were removed to a local county detention center or a special housing unit.  This relocation policy <u>intentionally</u> suppressed complaints of misconduct as the county facilities are higher levels of security and do not permit work details or vocational training.

29.

Despite the known issues of abuse, the FCI Management Team granted Officers Golightly and Shepherd with <u>unrestricted</u> and <u>unsupervised</u> contact with Plaintiffs including work details, bed checks, visitation, etc… which granted them one on one access.  Officers Golightly and Shepherd abused their positions of

authority to threaten and coerce Plaintiffs into engaging in sexual activities and keep the abuse quiet for fear of immediate retaliation.  Officers Golightly and Shepherd also used their access to personal history files, telephone call recordings, and personal emails giving him additional leverage to extract sexual favors and threaten the safety of Plaintiffs.

## ACCESS TO COUNSEL

### 30.

FCIT and FCIM maintain a system of checks and balances that makes access to competent counsel virtually impossible for female inmates that are victims of sexual abuse.

### 31.

First, Officers Golightly and Shepherd threatened Plaintiffs with direct and immediate retaliation in the event Plaintiffs reported any instances of sexual abuse including time in the special housing unit, loss of privileges, removal from work detail, and write "ups."   Officers Golightly and Shepherd reviewed Plaintiffs' confidential prison files, emails and recorded telephone conversations to intimidate Plaintiffs as part of his psychological coercion.  Additionally, Plaintiffs observed many examples of punishments handed out to other inmates that challenged or reported abuse by prison officials.  Because of the dependency of the officer/inmate relationship for basic necessities and privileges as identified in

PREA, any threats of retaliation were magnified, and Plaintiffs were unable to safely report the sexual abuse to potential legal counsel in a timely manner.

32.

Second, the FCI Management Team introduced a policy of removal of the female inmates to higher security county prisons or placement in special housing units for any victim reporting allegations of sexual abuse.  Plaintiffs observed this policy enforced by the FCI Management Team on countless occasions making reporting instances of abuse a significant safety risk.

33.

Third, the FCI Management Team monitored all of Plaintiffs' telephone and email communications with their friends and families and any mention of sexual abuse was flagged and immediately stamped out.

34.

Fourth, the FCI Management Team refused to give Plaintiffs access to a secure telephone line to discuss their legal rights with competent legal counsel requiring Plaintiffs to use the "open" lines for initial attorney/client interviews that were monitored by prison officials.

35.

Plaintiffs were effectively cut off from the outside world and only able to procure legal representation to protect their rights through a series of chance encounters.

36.

Only after securing counsel were Plaintiffs able to safely come forward and report the instances of sexual abuse through demand letters to the BOP in compliance with the Federal Tort Claims Act.  True and accurate copies of the initial demand letters to the BOP are attached hereto as Exhibit B.

37.

Even after formally engaging counsel, the FCI Management Team made communication difficult by reviewing attorney client privileged emails, listening to attorney client privileged phone calls, refusing to deliver attorney client privileged letters and refusing to allow for secure counsel phone calls by insisting that prison staff be present in the rooms where the calls took place.

## **KATHRYN DIRKS**

38.

Ms. Dirks arrived at FCIT in April 2016 after accepting a plea agreement. Within a year of her arrival, Officer Adam Shepherd began making sexually suggestive comments to her and engaged in a pattern of sexual harassment.  This

harassment quickly escalated to sexual assault and on one occasion he forced Ms.

Dirks to engage in non-consensual sexual acts in a staff bathroom with no video

surveillance.  While trapped in the staff bathroom, Officer Shepherd proceeded to

kiss, fondle, touch and expose his penis to Ms. Dirks while inserting his fingers

into her vagina.  When this incident was reported to FCIT officials, Ms. Dirks was

placed into an isolated, special housing unit for more than three weeks as

punishment for the incident while Officer Shepherd received no disciplinary

action.

39.

In 2019, Officer Golightly was transferred to FCIT and immediately began

making sexually suggestive comments to Ms. Dirks.  Ms. Dirks was afraid to

report the sexual harassment for fear of being placed in the special housing unit

again.  Towards the end of 2019, Ms. Dirks, who is a talented artist, was asked by

the prison staff to paint a mural in the staff breakroom.  The project lasted for

several weeks and Officer Golightly would routinely sit and watch Ms. Dirks as

she painted.  In early November 2019, prison staff observed Officer Golightly pull

his penis out of his pants and masturbate himself behind Ms. Dirks' back while she

was painting the mural.  The incident was seen and reported by another staff

member but FCIT management failed to take any disciplinary action.

16

40.

On or about November 10, 2019, while painting the mural in the staff breakroom, Officer Golightly approached Ms. Dirks and ordered her to assist him with retrieving items from a warehouse. Once inside the warehouse, which was a secluded area with no video surveillance, Officer Golightly forced Ms. Dirks into a back closet against her will, pushed her onto a chair, pulled her clothes off and began having unprotected intercourse with her. During the course of the rape, the chair flipped over, and Ms. Dirks landed on her head. Once on the floor, Officer Golightly forced Ms. Dirks to perform oral sex on him and forcibly ejaculated into her mouth. Ms. Dirks was able to preserve Officer Golightly's semen from this encounter by wiping it on her sweatshirt. The sweatshirt was turned over to OIG and was later confirmed to contain the DNA of Officer Golightly.

41.

Several days later, Officer Golightly again found Ms. Dirks alone in the staff breakroom painting the mural. While seated on a counter, Officer Golightly forced her legs apart severely bruising her inner thighs. He then pulled his penis out and forced Ms. Dirks to touch him until he ejaculated. Ms. Dirks wiped his semen on her bra and sweatpants and turned these items over to OIG as well. Ms. Dirks reported these incidents and received medical treatment at a local facility.

17

Photographs of her physical injuries were taken at the medical facility and remain in possession of the FCI Management Team.

42.

After reporting these incidents of abuse, prison officials at FCIT began a systematic campaign of retaliation against Ms. Dirks including:

a.  extended placement into the special housing unit at FCIT without following internal guidelines, procedures and due process;

b.  permitting five inmates to violently assault Ms. Dirks in the FCIT courtyard under the guise of a black lives matter protest;

c.  opening and reviewing protected attorney-client privileged communications from Ms. Dirks' legal counsel;

d.  transferring Ms. Dirks to FCI Hazelton (a higher security facility) in direct violation of BOP placement guidelines;

e.  confiscating Ms. Dirks' possessions during the transfer to FCI Hazelton; and

f.  refusing to provide Ms. Dirks with requested medical care and treatment.

43.

Ms. Dirks did not consent or give permission to Officers Golightly or Shepherd to touch her or engage in any sexual activity.  As a result of these sexual assaults and harassment from Officers Golightly and Shepherd, Ms. Dirks has

suffered extensive psychological trauma (including recurring issues of bulimia), depression, pain and suffering, physical trauma and is in constant fear of being trapped alone with another abusive officer.  Ms. Dirks demands compensation from the United States of America for this abuse in an amount to be determined at trial.

## **LINDSEY HOSFORD**

### 44.

Ms. Hosford was incarcerated at FCIT beginning in June 2016.  Ms. Hosford worked at several jobs on the complex and was eventually assigned to the food warehouse in the beginning of 2019 with Officer Golightly as her supervisor.

### 45.

Within weeks, Officer Golightly began making sexually suggestive comments to Ms. Hosford and engaged in a pattern of sexual harassment.  The harassment quickly evolved into sexual contact as Officer Golightly would often touch, kiss and grab Ms. Hosford's breasts, buttock and vagina as well as grabbing her hand and forcing it onto his penis.  These incidents of sexual assault occurred 3/4 times per week from February to April 2019.

### 46.

Sometime in May 2019, Officer Golightly requested that Ms. Hosford follow him to the warehouse basement below the kitchen area.  He took her into a

small room that holds two freezers and forced Ms. Hosford to engage in sexual

intercourse.  He ejaculated into a condom he had placed on his penis and quickly

disposed of the evidence.  Officer Golightly threatened Ms. Hosford not to report

the rape.

47.

Ms. Hosford did not consent or give permission to Officer Golightly to touch

her or engage in any sexual activity.  Ms. Hosford did not immediately report these

incidents of sexual abuse for fear of reprisal.  As a result of these sexual assaults

and harassment, Ms. Hosford has suffered extensive psychological trauma,

physical trauma, depression, pain and suffering and is in constant fear of being

trapped alone with another abusive officer.  Ms. Hosford demands compensation

from the United States of America for this abuse in an amount to be determined at

trial.

## **NIKKI NICHOLS**

48.

Ms. Nichols was incarcerated at FCIT beginning in 2016 after accepting a

plea deal.  In October/November 2019, Ms. Nichols volunteered to paint a mural in

the staff breakroom.  The painting project lasted for several weeks.  During this

time, Officer Golightly entered the staff breakroom on many occasions and began

verbally harassing Ms. Nichols commenting about her body, tattoos and sex acts he wanted her to perform.

49.

The verbal harassment quickly transitioned into sexual abuse as Officer Golightly routinely grabbed Ms. Nichols from behind as she was painting rubbing his hands over her body and thrusting his pelvis into her rear end.  On one occasion while they were along in the breakroom, Officer Golightly took his penis out of his pants and forced Ms. Nichols to perform oral sex on him.  On another occasion, Officer Golightly put his hands down Ms. Nichol's pants and inserted his fingers into her vagina.  Officer Golightly threatened to have Ms. Nichol's sent to "county" if she said anything about the abuse.

50.

Ms. Nichols did not consent or give permission to Officer Golightly to touch her or engage in any sexual activity.  Ms. Nichols did not immediately report these incidents of sexual abuse for fear of reprisal.  As a result of these sexual assaults and harassment, Ms. Nichols has suffered extensive psychological trauma, physical trauma, depression, pain and suffering and is in constant fear of being trapped alone with another abusive officer.  Ms. Nichols demands compensation from the United States of America for this abuse in an amount to be determined at trial.

21

## RASHON BOHANNON

51.

Ms. Bohannon was incarcerated at FCIM beginning in 2016 after accepting a plea deal.  Upon her arrival, she was assigned to kitchen duty and supervised by Officer Golightly.  He began making sexually suggestive comments to Ms. Bohannon and engaged in a pattern of sexual harassment.  The harassment quickly escalated to sexual assault as Officer Golightly began grabbing Ms. Bohannon's breasts, buttocks and vagina as well as forcing her to touch his erect penis.  On three separate occasions, Officer Golightly forced Ms. Bohannon to perform oral sex on him ejaculating into her mouth.

52.

FCIM staff suspected that Ms. Bohannon was engaged in sexual conduct with Officer Golightly and placed Ms. Bohannon in the special housing unit for several weeks.  When she returned to her cell, she noticed many of her personal belongings were missing including a journal where she maintained written details of the sexual abuse by Officer Golightly.  FCIM staff then forced her to sign a written statement that the information contained in her personal journal was for a fictional book she was writing.

53.

In 2017, Ms. Bohannon was transferred to FCIT.  In 2019, Ms. Bohannon was shocked to see Officer Golightly as a prison guard at FCIT.  Officer Golightly tracked Ms. Bohannon down and told her "I told you nothing would happen to me."  Officer Golightly repeatedly harassed and intimidated Ms. Bohannon every time he saw her.  In October 2019, Officer Golightly cornered Ms. Bohannon alone in the kitchen area.  He placed his hands down her pants and inserted his fingers into her vagina.  He demanded that she give him oral sex but Ms. Bohannon was able to break away after other inmates could be heard in the area.

54.

Ms. Bohannon did not consent or give permission to Officer Golightly to touch her or engage in any sexual activity.  Ms. Bohannon did not immediately report these incidents of sexual abuse for fear of reprisal.  As a result of these sexual assaults and harassment, Ms. Bohannon has suffered extensive psychological trauma, physical trauma, depression, pain and suffering and is in constant fear of being trapped alone with another abusive officer.  Ms. Bohannon demands compensation from the United States of America for this abuse in an amount to be determined at trial.

## COUNT I

## NEGLIGENCE

**(Defendant United States of America)**

55.

Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-54 of this Complaint for Damages as if fully set forth herein.

56.

The FCI Management Team and the Prison Investigative Agencies owed a duty to Plaintiffs while incarcerated at FCIT and FCIM to "protect public safety by ensuring that federal offenders serve their sentences of imprisonment in facilities that are safe, humane, cost efficient and appropriately secure" as mandated by the BOP.

57.

The FCI Management Team and the Prison Investigative Agencies breached their duties to Plaintiffs by negligently supervising, managing and retaining Officers Golightly and Shepherd during Plaintiffs' incarceration at FCIT and FCIM.

58.

The FCI Management Team and the Prison Investigative Agencies breached their duties to Plaintiffs by providing Officers Golightly and Shepherd with

<u>unrestricted</u> and <u>unsupervised</u> one-on-one access to Plaintiffs while incarcerated at

FCIT and FCIM despite knowledge of Officer Golightly's past sexual abuse and

harassment of female inmates.

59.

The FCI Management Team and the Prison Investigative Agencies breached

their duties to Plaintiffs by creating a system where victims of sexual abuse and

harassment are punished for reporting the sexual misconduct of prison staff by

transfer to more secure facilities, removal from educational and vocational

programs, placement in special housing units, loss of early release rights,

detrimental write-ups and loss of work privileges.

60.

The FCI Management Team and the Prison Investigative Agencies breached

their duties to Plaintiffs under PREA as follows:

- Section 115.11 – failing to enforce zero tolerance policy
- Section 115.13 – failing to supervise and monitor (video surveillance) one-on-one inmate/officer contact
- Section 115.15 – permitting improper cross-gender pat downs
- Section 115.17 – hiring, promoting and retaining officers who "may" have had improper sexual contact
- Section 115.43 – punishing sex victims with involuntary segregated housing, loss of privileges and work permits
- Section 115.61 – failing to report suspicion of sexual abuse
- Section 115.67 – failing to protect inmates from retaliation after reporting abuse
- Section 115.76 – failing to discipline staff for sexual misconduct

61.

As a direct and proximate cause of the negligence outlined above, the FCI

Management Team and the Prison Investigative Agencies caused damage to

Plaintiffs including psychological trauma, emotional distress, depression, physical

trauma and pain and suffering.

62.

Plaintiffs are entitled to damages from the United States of America under

the Federal Tort Claims Act for the negligence of the FCI Management Team and

the Prison Investigative Agencies in an amount to be determined at trial.

## COUNT II

## ASSAULT AND BATTERY

### (Defendant United States of America)

63.

Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-

62 of this Complaint for Damages as if fully set forth herein.

64.

Officers Golightly and Shepherd, acting within the course and scope of their

employment with the BOP as investigative or law enforcement officials, under

color of federal law and in violation of 28 U.S.C.S. § 2680 engaged in the

intentional assault and battery of **Kathryn Dirks**, through unwanted, non-

consensual sexual abuse and harassment as detailed in paragraphs 38-43 herein.

Officers Golightly and Shepherd caused damage to Ms. Dirks including

psychological trauma, emotional distress, depression, physical trauma and pain and

suffering for which the United States of America is liable under the Federal Tort

Claims Act in an amount to be determined at trial.

65.

 Officer Golightly, acting within the course and scope of his employment

with the BOP as an investigative or law enforcement official, under color of

federal law and in violation of 28 U.S.C.S. § 2680 engaged in the intentional

assault and battery of ***Lindsey Hosford***, through unwanted, non-consensual sexual

abuse and harassment as detailed in paragraphs 44-47 herein.  Officer Golightly

caused damage to Ms. Hosford including psychological trauma, emotional distress,

depression, physical trauma and pain and suffering for which the United States of

America is liable under the Federal Tort Claims Act in an amount to be determined

at trial.

66.

Officer Golightly, acting within the course and scope of his employment

with the BOP as an investigative or law enforcement official, under color of

federal law and in violation of 28 U.S.C.S. § 2680 engaged in the intentional

assault and battery of ***Nikki Nichols***, through unwanted, non-consensual sexual

abuse and harassment as detailed in paragraphs 47-50 herein.  Officer Golightly

caused damage to Ms. Nichols including psychological trauma, emotional distress,

depression, physical trauma and pain and suffering for which the United States of

America is liable under the Federal Tort Claims Act in an amount to be determined

at trial.

67.

Officer Golightly, acting within the course and scope of his employment

with the BOP as an investigative or law enforcement official, under color of

federal law and in violation of 28 U.S.C.S. § 2680 engaged in the intentional

assault and battery of ***Rashon Bohannon***, through unwanted, non-consensual

sexual abuse and harassment as detailed in paragraphs 51-54 herein.  Officer

Golightly caused damage to Ms. Bohannon including psychological trauma,

emotional distress, depression, physical trauma and pain and suffering for which

the United States of America is liable under the Federal Tort Claims Act in an

amount to be determined at trial.

**<u>COUNT III</u>**

**<u>FALSE IMPRISONMENT</u>**

**(Defendant United States of America)**

68.

Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-

67 of this Complaint for Damages as if fully set forth herein.

69.

Officers Golightly and Shepherd, acting within the course and scope of their employment with the BOP as investigative or law enforcement officials, under color of federal law, and in violation of 28 U.S.C.S. § 2680 unlawfully detained and deprived ***Kathryn Dirks*** of her liberty and freedom against her will and consent, without legal authority or necessity, and for the sole purpose of engaging in non-consensual sexual abuse and harassment as detailed in paragraphs 38-43 herein.   Officers Golightly and Shepherd caused damage to Ms. Dirks including psychological trauma, emotional distress, depression, physical trauma and pain and suffering for which the United States of America is liable under the Federal Tort Claims Act in an amount to be determined at trial.

70.

Officer Golightly, acting within the course and scope of his employment with the BOP as an investigative or law enforcement official, under color of federal law, and in violation of 28 U.S.C.S. § 2680 unlawfully detained and deprived ***Lindsey Hosford*** of her liberty and freedom against her will and consent, without legal authority or necessity, and for the sole purpose of engaging in non-consensual sexual abuse and harassment as detailed in paragraphs 44-47 herein. Officer Golightly caused damage to Ms. Hosford including psychological trauma,

emotional distress, depression, physical trauma and pain and suffering for which the United States of America is liable under the Federal Tort Claims Act in an amount to be determined at trial.

71.

Officer Golightly, acting within the course and scope of his employment with the BOP as an investigative or law enforcement official, under color of federal law, and in violation of 28 U.S.C.S. § 2680 unlawfully detained and deprived **_Nikki Nichols_** of her liberty and freedom against her will and consent, without legal authority or necessity, and for the sole purpose of engaging in non-consensual sexual abuse and harassment as detailed in paragraphs 47-50 herein. Officer Golightly caused damage to Ms. Nichols including psychological trauma, emotional distress, depression, physical trauma and pain and suffering for which the United States of America is liable under the Federal Tort Claims Act in an amount to be determined at trial.

72.

Officer Golightly, acting within the course and scope of his employment with the BOP as an investigative or law enforcement official, under color of federal law, and in violation of 28 U.S.C.S. § 2680 unlawfully detained and deprived **_Rashon Bohannon_** of her liberty and freedom against her will and consent, without legal authority or necessity, and for the sole purpose of engaging

in non-consensual sexual abuse and harassment as detailed in paragraphs 51-54 herein.  Officer Golightly caused damage to Ms. Bohannon including psychological trauma, emotional distress, depression, physical trauma and pain and suffering for which the United States of America is liable under the Federal Tort Claims Act in an amount to be determined at trial.

## COUNT IV

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Defendant United States of America)

73.

Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-72 of this Complaint for Damages as if fully set forth herein.

74.

Officers Golightly and Shepherd, acting within the course and scope of their employment with the BOP as investigative or law enforcement officials, under color of federal law and in violation of 28 U.S.C.S. § 2680 engaged in the intentional infliction of emotional distress of *Kathryn Dirks* through unwanted, non-consensual sexual abuse and harassment as detailed in paragraphs 38-43 herein. Officer Golightly's and Shepherd's conduct was (1) intentional and reckless with knowledge that emotional distress would likely result, (2) outrageous and went beyond all bounds of decency to be tolerated in a civilized community,

(3) the direct and proximate cause of the emotional distress endured by Ms. Dirks, and (4) severe and damaging for which the United States of America is liable under the Federal Tort Claims Act in an amount to be determined at trial.

75.

Officer Golightly, acting within the course and scope of his employment with the BOP as an investigative or law enforcement official, under color of federal law and in violation of 28 U.S.C.S. § 2680 engaged in the intentional infliction of emotional distress of *Lindsey Hosford* through unwanted, non-consensual sexual abuse and harassment as detailed in paragraphs 44-47 herein. Officer Golightly's conduct was (1) intentional and reckless with knowledge that emotional distress would likely result, (2) outrageous and went beyond all bounds of decency to be tolerated in a civilized community, (3) the direct and proximate cause of the emotional distress endured by Ms. Hosford, and (4) severe and damaging for which the United States of America is liable under the Federal Tort Claims Act in an amount to be determined at trial.

76.

Officer Golightly, acting within the course and scope of his employment with the BOP as an investigative or law enforcement official, under color of federal law and in violation of 28 U.S.C.S. § 2680 engaged in the intentional infliction of emotional distress of *Nikki Nichols* through unwanted, non-

32

consensual sexual abuse and harassment as detailed in paragraphs 47-50 herein.

Officer Golightly's conduct was (1) intentional and reckless with knowledge that

emotional distress would likely result, (2) outrageous and went beyond all bounds

of decency to be tolerated in a civilized community, (3) the direct and proximate

cause of the emotional distress endured by Ms. Nichols, and (4) severe and

damaging for which the United States of America is liable under the Federal Tort

Claims Act in an amount to be determined at trial.

77.

Officer Golightly, acting within the course and scope of his employment

with the BOP as an investigative or law enforcement official, under color of

federal law and in violation of 28 U.S.C.S. § 2680 engaged in the intentional

infliction of emotional distress of ***Rashon Bohannon*** through unwanted, non-

consensual sexual abuse and harassment as detailed in paragraphs 51-54 herein.

Officer Golightly's conduct was (1) intentional and reckless with knowledge that

emotional distress would likely result, (2) outrageous and went beyond all bounds

of decency to be tolerated in a civilized community, (3) the direct and proximate

cause of the emotional distress endured by Ms. Bohannon, and (4) severe and

damaging for which the United States of America is liable under the Federal Tort

Claims Act in an amount to be determined at trial.

## COUNT V

## CONSTITUTIONAL VIOLATIONS AND BIVENS CLAIMS

### (Defendants Golightly and Shepherd)

78.

Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-77 of this Complaint for Damages as if fully set forth herein.

79.

Officers Golightly and Shepherd acting under color of federal law as prison guards for the BOP violated Amendment Eight to the United States Constitution by subjecting Plaintiffs to "cruel and unusual" punishment while incarcerated by the United States of America engaging in sexual harassment, sexual abuse, false imprisonment, and intentional infliction of emotional distress as outlined in paragraphs 38-54 herein.

80.

Officers Golightly and Shepherd acting under color of federal law as prison guards Violated Amendments Five and Fourteen of the United States Constitution by denying Plaintiffs their "due process" and "equal protection" rights under the law by engaging in sexual harassment, sexual abuse, false imprisonment, and intentional infliction of emotional distress as outlined in paragraphs 38-54 herein.

81.

Plaintiffs are entitled to compensatory and punitive damages from Defendants Golightly and Shepard including damages for psychological trauma, emotional distress, depression, physical trauma, pain and suffering and personal injury in amounts to be determined at trial.

**WHEREFORE**, Plaintiffs requests that the Court:

1) Grant judgment in favor of Plaintiffs on their claims for Negligence, Assault and Battery, False Imprisonment, and Intentional Infliction of Emotional Distress against Defendant United States of America;

2) Grant judgment in favor of Plaintiffs on their claims for Constitutional Violations against individuals Golightly and Shepherd;

3) Award damages to Plaintiffs in amounts to be determined at trial;

4) Grant Plaintiffs a jury trial on all claims triable by jury;

5) Grant Plaintiffs its fees, expenses and attorneys' fees involved in prosecuting this action; and

6) Grant such other and further relief the Court deems just and proper.

Respectfully submitted this 17th day of December 2020.

/s/ Bryan E. Busch
Bryan E. Busch, Esq. (*Pro Hac Vice*)
bb@bsms.law
BUSCH, SLIPAKOFF, MILLS &
SLOMKA, PLLC
6400 Powers Ferry Road, Suite 391
Atlanta, Georgia 30339
(404) 800-4062 (Telephone)
*Attorneys for Defendants*


/s/ Christopher Y. Mills
Christopher Y. Mills, Esq.
cm@bsms.law
BUSCH, SLIPAKOFF, MILLS &
SLOMKA, PLLC
319 Clematis Street, Suite 109
West Palm Beach, Florida 33401
(561) 408-0019 (Telephone)
*Attorneys for Defendants*